REQUESTED BY: Benita M. Seliga, Deputy County Attorney, Adams County, P.O. Box 71, Hastings, Nebraska, 68901.
Does Neb.Rev.Stat. § 2-955 (Supp. 1983), which provides for a Weed Control Authority to either notify the county attorney to proceed against the landowner on an infraction or to cause proper control methods to be used on the infested land by entering and destroying weeds at the expense of the landowner, allow both penalties to be pursued against a landowner, or, because it is written in the disjunctive, is a Weed Control Authority limited to only one penalty?
Either or both penalties, after the proper notice and time lapse, may be used by the Authority.
We agree that the language in subpart (1)(b) of Neb.Rev.Stat. § 2-955 (Supp. 1983) appears, at first blush, to cause a problem. If it is read to mean: `Each Control Authority shall use one of the following forms for all individual notices. . . .' This would almost appear to indicate that a Control Authority can only select once and then forever after be bound to that one remedy. This, however, could cause serious constitutional questions, such as unequal protection to the laws.
It is axiomatic that we are not to interpret a statute so as to render it unconstitutional. Thus, we are entitled to interpret the language. One of the means of interpreting statutory language is to refer to the legislative history in an attempt to determine the intent of the legislature in writing the bill. The aforesaid language came into the statute by means of L.B. 154 passed by the 88th Legislature, 1st Session in 1983, and approved by the Governor on May 20th, 1983. The committee hearing on the bill is found in the records of the Committee on Agriculture and Environment, 88th Legislature, 1st Session, 1983, Minute Book No. 1, at January 28, 1983, page 38. Larry Schere, who had worked on the bill, explained it at the opening of the committee hearing saying:
 L.B. 154 would make individuals who fail to comply with the weed control notices onto specific land subject to a continuing accumulative fine of up to $100.00 per day for fifteen days up to a maximum $1500. The fine would be addition to and precede the ability of the Weed Control Authorities to go in and take care of the weed problems and then bill the noncomplying landowners. * * * I think there may be some question about whether we want to make the two provisions work simultaneously so that we don't have to wait the full thirty days, but the way it's set up now, they work consecutively first the fine, and then go in and perform the clean up work and charge the owners, so that the owner could be subject to both the cost and the fine.
The floor debate commences on page 1480 of Book No. 6 of the record, and Senator Vickers, the sponsor of the bill states:
 The proposal that I am offering in L.B. 154 is to set up a mechanism to notify those landowners if a problem exists that there is a problem that has been looked at by the County Weed Authority, and then, by specifying the notice also that a fine mechanism can be imposed if these individuals do not take care of the problem. * * *
Continuing at page 1481, Senator Vickers says:
 Then, at the end of the fifteen day period of the fine to take place to hopefully give the landowner time to take care of his problem, then the Weed Authority would still be able to go in and clean up the problem as they can under the present statutes and assess the cost for that clean up to the as a lien on the property to be paid through the taxes. * * * The fine that we are imposing with this, . . . is an additional fine.
Then, on page 4735 of Book No. 17, as to the Vickers' amendment found on page 1890, Legislative Journal, Senator Vickers says, commencing on page 4736:
 So with the amendment that I am offering to you, the Weed Authority would have to determine which mechanism to follow. They could follow one of the two mechanisms. . . . The Weed Authority would have to determine if the stage of growth of the noxious weed infestation was such that if it remained uncontrolled, that it would in fact cause a problem to other landowners and other people in the area, because of the fact that it would be going to seed. . . . I split the two notices. They can send a notice first of all to the landowner specifying that they have ten days to clean up the situation. . . . Now on the other hand, if the situation is such that the weeds are not ready to go to seed and the Weed Authority chooses to follow the other option, they can send a notice specifying the landowner has fifteen days and at the end of the fifteen days if the problem is not corrected that the fine mechanism will take place, then the Weed Authority would still have the option of cleaning it up later on if in the fact nothing else happened. . . . So the substantive change, once again, is that we separate the two mechanisms so that if there is a situation where the weeds are ready to go to seed, then we do not tie the Weed Authority's hands for thirty days before they can go in and clean up the situation. At the same time, giving them the authority and the ability to impose this fine mechanism or this club, if you will, over the landowner. . . .
The foregoing legislative history, we believe, makes it very clear that the proper interpretation of the aforesaid language in Neb.Rev.Stat. § 2-955 (Supp. 1983) is: `Each control authority shall use one of the following forms for all individual notices. . . .' In other words, individual notices can only be given on one of the to forms set forth in the statute.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Warren D. Lichty, Jr. Assistant Attorney General
Paul L. Douglas Paul L. Douglas Attorney General